### Helton v. Commonwealth.

November 18, 1949.

Rehearing denied March 10, 1950.

R. L. Maddox, Judge.

Floyd Taylor for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE THOMAS—Affirming.

Appeal from the conviction for malicious shooting at another without wounding with intent to kill, rendered in the Bell circuit court against defendant, wherein he received a sentence of two years.

Three grounds are argued for reversal: (1) The verdict is against the evidence and the law; (2) The court erred in admonishing and instructing the jury, and (3) The court erred in failing to give the whole law of the case.

The substance of the testimony for each side is: Four officers, two of whom were policemen of the city of Pineville, one a deputy sheriff and one a state policeman, were investigating a report made to them of some

shooting in the vicinity of defendant's home in Pineville on the night of July 25, 1948, between 12 and 12:30.

The lady who lived in the vicinity (next door) informed the officers that the shooting took place in the alley separating her residence from the apartment building in which appellant lived. It was a two-story frame building containing several apartments on both the first and second floors. A stairway provided access to a long hall on the second floor, off of which were the various apartments. The lower portion of the stairway was open and the upper portion was enclosed.

The officers together began to ascend this stairway to the second floor in their investigation. Their testimony is substantially the same and to this effect:

That at about the time they had ascended the first third of the stairway, they saw defendant standing at the head thereof with an automatic pistol in his hand; that they informed him that they were law officers and requested him to drop his gun as he appeared to be drunk and was brandishing it in a threatening manner. His reply was that he would be "damned" if he would and immediately began firing into the officers crowded on the stairway. None of them were struck, but one was knocked to his knees and another lost his cap as a result of the shooting. Thereupon the officers returned fire and defendant was only flesh wounded in three places. When they reached his body they found him lying at the head of the stairs in the hallway, an army 45 by his side (still warm) with several bullets expended from the clip and an extra clip partially filled with shells, on his person. They thereupon called the county attorney and an ambulance to remove the defendant. They had no warrant for his arrest, but were merely investigating the report of the shooting and disorder in the vicinity and they were required to shoot defendant only as the result of his provocation in firing upon them first after having been told that they were officers and that he fired at least twice or more.

The defendant's version of the affair is that he left a coffee shop in Pineville earlier in the evening accompanied by one Elliott and proceeded toward his home when he was accosted by two men with drawn guns; that these men threatened him and followed him home;

that he thereupon went to his upstairs apartment and procured his pistol; that the men came upon the stairway and were told by his wife to go away, which they did, and that Elliott had left previously for his home.

It is the defendant's contention that he mistook the police officers for the two men who had threatened him previously, but that he recognized them when he reached the top of the stairs at the end of the hall and said to them, "Buddy, I will tell you," when the officers began firing. He states that at no time did he present his pistol upon the officers but had it harmlessly down at his side; that he did not face them directly but was turned toward them; and that all the wounds he received were in his back.

The doctor's affidavit introduced in behalf of the defendant is to the effect that the defendant's wounds were in his back.

From reading the whole testimony it clearly appears that defendant had been drinking; had gone home and was disorderly in the vicinity of his home; that neighbors had complained to the police and that the above events transpired as the result of the investigation.

No one had seen the two men who purportedly had threatened defendant enroute home, but defendant, his wife and Elliott so testified.

It is obvious that the stairway was of a semi-public nature at least, being partially in the open and leading only to the hall on the second floor of the building, off of which the various apartments on that floor extended, each having a door opening thereon. Several tenants occupied the first floor but only the defendant occupied the second one, the other apartments on that floor being vacant at the time. Thus it would seem the officers were within their rights in ascending the stairway in discharging their official duties to preserve the peace, even though they had no warrant for his arrest.

The evidence amply sustains the verdict and the first ground urged for reversal appears to be without merit.

Ground (1) argued for reversal is wholly without foundation since there was ample evidence to submit

the guilt or innocence of the defendant to the jury and to support its verdict of conviction. We have held in numerous cases that to merely state in the motion for a new trial that a verdict "is against the law" raises no legal questions for the determination of this court. Therefore ground (1) need not be further discussed.

When the case was called for trial defendant moved to continue the trial on account of the absence of Dr. Adkins who, if present, would testify that the wounds inflicted upon defendant were in his back. Both defendant and another witness testified to that fact, but the court, nevertheless, permitted that evidence as alleged to be introduced as the testimony of the absent physician, but at the same time admonished the jury that: "You will give that, gentlemen of the jury, the same force and effect as if Dr. Adkins were here testifying in person. It is not necessary you believe it but will give it the same weight as if he were present and testifying."

Counsel for defendant in his brief filed in this court strenuously objects to this language of the court in giving the admonition: "It is not necessary you believe it." It will be perceived that the court told the jury to give the same weight to the testimony of the physician "as if he were present and testifying in the case."

In all jury trials, where the testimony is contradictory, the jury must believe some witnesses and disbelieve others. There exists in the practice no rule of law requiring the members of a jury, or a judge trying a case without the intervention of a jury, to implicitly believe the testimony given by each witness who testified in the case. If such a rule existed then no final conclusion could ever be reached where the testimony is contradictory. Therefore, the complained of language in the court's admonishment in this case did no more than so inform the jury. It had already directed the jury in giving the principal instruction in the case (No. 1) to convict defendant if the jury believed from the evidence beyond a reasonable doubt that he had committed the offense charged against him, and in instruction Number 5 the jury was told, in substance, that unless its members believed defendant guilty under the evidence beyond a reasonable doubt then "they will find him not guilty." No authority is cited by counsel to sustain his

argument that the complained of language in the court's admonishment was prejudicial to his client and we have been unable to find any in support thereof.

While it is not usual for courts to so admonish the jury in such circumstances, yet in doing so the court in this case did no more than each member of the jury, qualified to sit as. such,. already knew, i. e., that they could believe or disbelieve the testimony of any witness in arriving at their verdict. Section 340 of the Criminal Code of Practice as construed by us does not authorize a reversal of a judgment of conviction unless the verdict be rendered against the defendant by which his substantial rights have been prejudiced. Therefore, even though the complained of language in the court's admonition should be considered error, we conclude that in the circumstances it did not operate to the prejudice of defendant.

It is also argued that the court committed prejudicial error in instruction (1) given to the jury. The court in the first part of that instruction followed the language of the indictment in describing the offense charged therein as maliciously and feloniously shooting at another with intent to kill, but without wounding the one shot at. However, in the latter part of that instruction the court said: "but from which shooting at, death did not ensue." Section 435.170, KRS, including subsection (1) thereof says:

"Any person shall be confined in the penitentiary for not less than two nor more than twenty-one years who:

"(1) Willfully and maliciously, with a gun or other instrument loaded with a leaden bullet or other hard substance, shoots at another without wounding him, or shoots at and wounds another with intent to kill him so that he does not die from the wound, or wounds a person other than the person shot at so that he does not die from the wound;".

It will therefore be seen that shooting at another with criminal intent without wounding him, and shooting at him with the same intent and wounding him, but from which he does not die, are each contained in the same subsection of the statute, and the same punish-

ment is prescribed for committing either offense. The criticism, therefore, directed by counsel to instruction Number (1) is without merit.

Wherefore, the judgment is affirmed.